J-S72029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LORRAINE McCALL, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LANCE A. THORNTON, | : | |
| | : | |
| Appellant | : | No. 790 WDA 2014 |

Appeal from the Order Entered April 15, 2014,
In the Court of Common Pleas of Erie County,
Domestic Relations, at No. NS 201301113-PACSES No. 486114105.

BEFORE: BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 31, 2014**

Appellant, Lance A. Thornton ("Father"), appeals from the order

entered on April 15, 2014, regarding child support for his two minor children

with Appellee, Lorraine McCall ("Mother"). We affirm.

The trial court accurately set forth the procedural history of this

appeal:

> On July 23, 2013, [Mother] filed a Complaint for Support
> requesting support for two minor children. Pursuant to an
> agreement of the parties, the Court entered an August 26, 2013
> Order of Court assessing Mother with a monthly net income of
> $1,379.70, Father with a monthly net income of $2,515.12[,]
> and ordering Father to pay $738.76 monthly for child support
> plus arrears. The Order set a review date on the case for
> November of 2013.
>
> Following a November 27, 2013 support conference, the
> Court issued an Interim Order of Court of the same date
> assessing Mother with a monthly net income of $1,379.86,
> Father with a monthly net income of $6,871.42[,] and ordering

_____
*Retired Senior Judge assigned to the Superior Court.

Father to pay $1,494.04 monthly for child support, plus arrears. As detailed in the November 27, 2013 Summary of Trier of Fact, Father failed to provide his 2012 tax return, resulting in the parties' prior agreement and then failed to provide his information regarding his partnership income at the November 27, 2013 conference. When Father ultimately provided the information, it indicated that Father reported a loss of $139,722.00. The conference officer assessed Father with an earning capacity of $115,000.00 based upon Father's prior employment with STNA,[1] the same earning capacity set for Father on January 8, 2013 at PACSES Case 630109800. Father filed a Demand for Court Hearing. Following an April 11, 2014 *de novo* hearing, this Court issued its April 15, 2014 Order making the November 27, 2013 Order a final order.

Trial Court Opinion, 6/24/14, at 1–2.

Father appealed, raising six allegations of error which were condensed to two basic issues by the trial court in its Pa.R.A.P. 1925(a) opinion. In his appellate brief, Father identifies those issues as follows:

 I. The trial court erred and abused it[s] discretion in assessing the [A]ppellant's income at $6871.42 a month and not assessing his income at a level consistent with income taxes and pay records.

 II. That the trial court erred and abused its discretion in its income calculation and violated the Consumer Credit Protection Act.

Appellant's Brief at unnumbered 4.

The standard of review with respect to the amount of a support award is largely within the sound discretion of the trial court. *Miller v. Miller*, 783 A.2d 832, 835 (Pa. Super. 2001). A finding that the court abused its

---

[1] Although never specifically identified, it appears from the record that STNA is a division of Valvoline.

discretion "requires proof of more than a mere error in judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Isralsky v. Isralsky*, 824 A.2d 1178, 1186 (Pa. Super. 2003) (quoting *Portugal v. Portugal*, 798 A.2d 246, 249 (Pa. Super. 2002)). This Court may reverse a trial court's determination concerning support only if the court's order cannot be sustained on any valid ground. *Spahr v. Spahr*, 869 A.2d 548, 551 (Pa. Super. 2005) (citing *Laws v. Laws*, 758 A.2d 1226, 1228 (Pa. Super. 2000)).

Additionally, this Court has held that although support obligations are determined primarily by the parties' actual earnings, where the evidence reveals a discrepancy between one's income and one's earning capacity, the obligation is determined by earning capacity rather than actual earnings. *Woskob v. Woskob*, 843 A.2d 1247, 1251 (Pa. Super. 2004) (citing *DiMasi v. DiMasi*, 597 A.2d 101 (Pa. Super. 1991)). "Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history." *Woskob*, 843 A.2d at 1251 (citation omitted). A party cannot voluntarily reduce his earnings in an attempt to circumvent a child support obligation. *Grigoruk v. Grigoruk*, 912 A.2d 311, 313 (Pa. Super. 2006). *See also Baehr v. Baehr*, 889 A.2d 1240,

1245 (Pa. Super. 2005) (where party assumes lower paying job or fails to obtain appropriate employment, support obligation determined by assessed earning capacity).

At issue in the *de novo* hearing conducted by the trial court was the conference officer's calculation of Father's annual earning capacity at $115,000.00, based upon Father's prior employment with STNA. No oral testimony was presented at the hearing. The proceeding instead consisted of submission of documentary evidence relative to the parties' earnings and argument of counsel.[2] The trial court summarized the evidence of Father's income as follows:

> Father has a work history which includes working for NASCAR, where he supervised more than 250 people and had a six figure salary. *See* N.T. *De Novo Hearing*, April 11, 2014, at 7 and 10. Then, Father worked for STNA, Inc., making approximately $115,000 annually. *See* N.T. at 9-10. When Father's job ended, he started his own business, RainEater LLC. *See* N.T. at 7.

---

[2] At the outset of the *de novo* hearing, Father's counsel remarked that it was agreed that the evidence in the case would be submitted through documents, followed by counsels' arguments. Father's counsel then introduced six documents related to income of the business started by Father, RainEater, LLC, Father's income derived from RainEater, and the construction of Father's new house. The only evidence admitted on Mother's behalf was a pay statement. Although no one challenged the procedural posture of the hearing, we note it because it appears that, by agreeing to this format, Mother, as the complainant, was relieved of her burden of proof as the party seeking modification. **See Summers v. Summers**, 35 A.3d 786, 789 (Pa. Super. 2012) (burden of demonstrating substantial change warranting modifying child support rests with moving party).

Father owns 94.34 % of the profit, loss or capital of RainEater, LLC. *See* Exhibit 4. With regard to his income, Father presented to the Court only a list of checks written by Raineater, LLC to him or on his behalf to PA SCDU[1] totaling $37,419.61 in income to him between April 19, 2013 and April 4, 2014. *See* Exhibits 1 and 2. Father also presented the Profit & Loss Statement of RainEater, LLC from January 1, 2014 through April 8, 2014 showing a loss of $147,925.26 and his Schedule K-1 from Partnership's 2012 Return of Income showing a $116,566 loss. *See* Exhibits 3 and 4. Father asserts that, although RainEater, LLC has a bright future, it simply is not producing income for him at present. *See* N.T. at 8.

> 1 The child support payment is a combination of support owed by Father in this case, as well as support owed by Father in Thomas-Thornton v. Thornton, Docket NS200501862, PACSES Case ID [630109800].

Meanwhile, despite his meager reported earnings and the apparent struggles of his company, Father, in August of 2013, entered into an agreement to have an approximately 3,000 square foot home built for $328,105.00. *See* Exhibit 6. Furthermore, Father's reported information shows a substantial growth in sales. Specifically, in 2012, Father, on his U.S. Return of Partnership Income reported gross receipts or sales for the year as $113,448.00. *See* Exhibit 4. Meanwhile, in just the first four months of 2014, RainEater, LLC reports $109,980.04 in sales. *See* Exhibit 3. Despite the huge growth in sales, Father reports a much higher loss in just four months at $147,925.26 as compared to the entire year of 2012 loss of $123,172.00. *See* Exhibits 3 and 4.

Trial Court Opinion, 6/24/14, at 3–4.

The trial court determined that the financial information supplied by Father was vague, and it remained unclear what portion of RainEater's income was actually attributable to Father. The court thus found it appropriate to calculate Father's income under Pa.R.C.P 1910.16–2(d)(4),

the Support Guideline related to earning capacity. This guideline is utilized when "the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment . . . ." *Id*. In such instances, the fact-finder:

> may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record.

*Id*.

Citing to the fact that Father was building an expensive house on his reported income of less than $40,000.00, the trial court surmised that Father was "concealing his actual income by offsetting it in losses through RainEater, LLC." Trial Court Opinion, 6/24/14, at 4. Given this evidentiary uncertainty, the court characterized its position as "untenable" in that it was required to "formulat[e] a support award, without actual income information." *Id*. at 5. Accordingly, the trial court mimicked the conference officer and imputed an earning capacity to Father consistent with the position he held previously at STNA. The court justified this calculation by reference to the January 8, 2013 order entered in Father's separate support case, wherein Father was ascribed an earning capacity equivalent to his $115,000.00 annual income at STNA. The court considered that Father did not challenge this earning capacity figure in the other action and further

observed that Father's financial circumstances, other than the construction of the new house, were basically unchanged since entry of that support order. *Id*. at 5–6.

Father argues on appeal that the trial court abused its discretion when it imputed an income to him from a job he held years ago[3] and disregarded all evidence that RainEater is not currently a profitable enterprise. He contends that the documentary evidence irrefutably demonstrated that RainEater is operating at a loss, and the court's finding to the contrary, primarily based upon Father's contract to build a new house, was grounded on speculation. As such, Father challenges the credibility determination made by the trial court.

As a reviewing court, we do not weigh the evidence or determine credibility because these are functions of the trial court. *Doherty v. Doherty*, 859 A.2d 811, 812–813 (Pa. Super. 2004). Here, the trial court did not dispute the technical accuracy of the RainEater financials presented by Father; rather, it determined that they did not precisely reflect the income Father received from RainEater.

The trial court was not required to accept that Father presented a realistic representation of the amount of income he derives from RainEater.

---

[3]   We note that the record, the trial court opinion, and the appellate briefs are silent regarding the date on which Father's employment with STNA terminated or when RainEater, LLC was established.

*See McAuliffe v. McAuliffe*, 613 A.2d 20, 22 (Pa. Super. 1992) (where trial court finds that claims of reduced income are not credible, this determination will generally be upheld on review). *See also Isralsky*, 824 A.2d at 1188 (trial court free to reject Father's evidence and to conclude that Father was hiding income to avoid his financial obligations). While the strength of the court's credibility determination would have been enhanced had oral testimony been received, its rejection of the documentary evidence's depiction of Father's financial situation was not "manifestly unreasonable or based on bias, ill will, prejudice or partiality." *Id*. at 1186. Accordingly, the trial court's credibility assessment will not be disturbed on appeal.

The trial court then proceeded to evaluate Father's income by referencing considerations involved when a parent owns his own business. The trial court acknowledged that Father's records indicated that RainEater was operating at a loss, but applied the "well-established law that 'deductions or losses reflected on corporate books are irrelevant to the calculation of available income unless they reflect an actual reduction in available cash.'" Trial Court Opinion, 6/24/14, at 4 (quoting *Fennell v. Fennell*, 753 A.2d 866, 868 (Pa. Super. 2000) (citations omitted)). The court also noted that RainEater's Profit and Loss Statement included automobile and cellular telephone expenses, meals, travel, and

entertainment—items which are deductible for tax purposes but are attributed to the business owner as income for support purposes. Trial Court Opinion, 6/24/14, at 5.

As the trial court recognized, we have held that the calculation of income available for child support purposes must reflect the actual available financial resources of the obligator "and not the oft-time financial picture created by application of federal tax laws." *Fennell*, 753 A.2d at 868 (quoting *Labar v. Labar*, 731 A.2d 1252, 1255 (Pa. 1999)). Further, "all benefits flowing from corporate ownership must be considered in determining income available to calculate a support obligation." *Fennell*, 753 A.2d at 868. For example, entertainment and other personal expenses, paid by a party's business must be included in income for purposes of calculating child support. *Mascaro v. Mascaro*, 803 A.2d 1186, 1194 (Pa. 2002) (quoting *Heisey v. Heisey*, 633 A.2d 211, 212 (Pa. Super. 1993)). "'[T]herefore . . . the owner of a [business] cannot avoid a support obligation by sheltering income that should be available for support by manipulating salary, perquisites, corporate expenditures, and/or corporate distribution amounts.'" *Spahr*, 869 A.2d at 552 (quoting *Fennell*, 753 A.2d at 868). It is the actual *c*ash flow that should be considered, not the federally taxed income. *McAuliffe*, 613 A.2d at 22. Accordingly, in the case *sub judice*, the trial court's decision to look beyond the submitted tax

documents and income statements to discern Father's actual income is sanctioned under the prevailing case law and was a proper exercise of its discretion.

Having dismissed the trustworthiness of the financial information submitted by Father, the court's income calculation was reasoned by the one substantive piece of evidence before it, namely, the unchallenged January 8, 2013 support order, assessing Father with an annual income of $115,000.00. As the court pointed out, the only significant change in Father's financial situation since that order was entered was the contract to construct a house valued at $328,105.00. The court's finding that this expenditure did not comport with Father's stated income and its reliance on the January 8, 2013 support order were supported by the record. Therefore, the court's resulting assessment of Father's earning capacity gleaned from these findings did not amount to an abuse of discretion.

As a final note on this issue, we observe that absent from the trial court's discussion on earning capacity was any consideration of the Rule 1910.16-2(d)(4) factors, *i.e.*, Father's age, education, health, mental and physical condition, or child care responsibilities. However, as the crucial point of dispute was the question of Father's earning history, the court's failure to assess these factors is not fatal to the reliability of its support calculation and is not tantamount to an abuse of discretion.

Father's second claim of error is that the trial court's income calculation violated the Consumer Credit Protection Act. Mother asserts that Father has failed to develop this argument in any meaningful manner. We agree.

The Rules of Appellate Procedure require that each question an appellant raises be supported by discussion and analysis of pertinent authority. **Estate of Haiko v. McGinley**, 799 A.2d 155, 161 (Pa. Super. 2002); Pa.R.A.P. 2119(b). "Appellate arguments which fail to adhere to [appellate rules] may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." **Lackner v. Glosser**, 892 A.2d 21, 29–30 (Pa. Super. 2006) (citations omitted).

Father's argument on his second issue is one paragraph in length and asserts baldly that the trial court's conclusion that he failed to report his actual income violated the Consumer Credit Protection Act. Father cites no legal authority for this position; indeed, he does not even provide a citation to the statute under which he asserts his claim. Without a reasoned discussion of the law applicable to Father's argument, our ability to conduct effective appellate review is severely hampered. Consequently, we deem this issue waived. **See Commonwealth v. Johnson**, 985 A.2d 915, 924

(Pa. 2009) (stating that where appellate brief fails to provide any discussion of claim with citation to relevant authority or fails to develop issue in meaningful fashion capable of review, that claim is waived).

For the reasons stated above, and in light of our stringent review standard, the trial court's support order will be upheld.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/31/2014